932 F.2d 338
 59 USLW 2697, 20 Fed.R.Serv.3d 262,
21 Bankr.Ct.Dec. 1094,
Bankr. L. Rep. P 74,031, 16 UCC Rep.Serv.2d 421
 In re VIRGINIA INFORMATION SYSTEMS CORPORATION, Debtor.
Henry J. COUNTS, Plaintiff-Appellee,
v.
WANG LABORATORIES, INC., Defendant-Appellant.
In re VIRGINIA INFORMATION SYSTEMS CORPORATION, Debtor.
Henry J. COUNTS, Trustee, Plaintiff-Appellee,
v.
WANG LABORATORIES, INC., Defendant-Appellant.
 Nos. 89-2228, 91-2339.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1990.
Decided May 3, 1991.
As Amended June 4, 1991.
 
 Bryan T. Veis, argued, Steptoe & Johnson (Filiberto Agusti, Steptoe & Johnson, on brief), Washington, D.C., for defendant-appellant.
 William Thomas Freyvogel, argued, Adams, Porter & Radigan, Ltd. (Kevin V. McAlevy, Adams, Porter & Radigan, Ltd., on brief), McLean, Va., for plaintiff-appellee.
 Before SPROUSE and WILKINSON, Circuit Judges, and HADEN, Chief District Judge.*
 SPROUSE, Circuit Judge:
 
 
 1
 We interpret Sec. 547(b) of the Bankruptcy Code, 11 U.S.C. Sec. 547(b), to determine whether a transfer of funds by check occurs at the time the check is delivered to the creditor or at the time it is honored by the drawee bank. The district court held that a transfer occurs when the debtor's check is honored. We reverse that portion of the district court's judgment and hold that the outcome here is governed by In re Continental Commodities, Inc., 841 F.2d 527 (4th Cir.1988), and Quinn Wholesale, Inc. v. Northen, 873 F.2d 77 (4th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989) (involving Secs. 547(c)(2)(B) and 549(a) of the Bankruptcy Code respectively and holding that a "transfer" occurs at the time of delivery). However, we affirm the district court's judgment denying the creditor's Fed.R.Civ.P. 52(b) and 60(b) motions, which concerned belated efforts by the creditor to inject the issue of transfer for "new value" into the litigation.
 
 
 2
 * The facts are uncomplicated and undisputed. The bankrupt, Virginia Information Systems Corporation ("VISC"), was a Virginia corporation engaged in the business of selling and servicing computer equipment. On September 12, 1986, it filed for bankruptcy under Chapter 11 of the Bankruptcy Code. As part of its business operation, it had purchased computer equipment and services from Wang Laboratories, Inc. ("Wang") on credit. In June and July of 1986, substantially behind in its payments, VISC had written three checks to Wang to help balance its account. The first check, in the amount of $103,973.15, was signed and mailed on June 10, 1986. Wang received the check on June 11, 1986, endorsed and deposited it on June 13, 1986, and the drawee bank honored it on June 16, 1986. The second check, in the amount of $112,407.41, was signed and mailed by VISC on July 10, 1986. The third and final check, in the amount of $9,100.29, was signed and mailed by VISC on July 15, 1986.
 
 
 3
 Section 547(b) of the Bankruptcy Code permits a trustee to "avoid," as preferences, most transfers of "property" of the debtor made within ninety days prior to the filing of the bankruptcy petition. Pursuant to this provision, VISC, as debtor-in-possession, filed a complaint in bankruptcy court to recover the value of all three checks issued to Wang.[1] At trial, the parties stipulated that the ninety-day preference period ran from June 14 to September 12, 1986, the date the petition was filed. They also agreed that the second and third checks were transferred within the ninety-day period and that the trustee could avoid the transfer of those funds. The bankruptcy trial, therefore, concerned only the trustee's right to avoid the transfer of funds represented by the first check. Wang contended that the check had been "transferred" to it on June 11, 1986, the day it received the check, and three days before the Sec. 547(b) preference period started. The bankruptcy court disagreed, holding that a check is "transferred" when it is honored by the drawee bank--in this instance on June 16--two days after the preference period started. Accordingly, the bankruptcy court granted judgment to the trustee in the amount equal to the total of the three checks, plus interest.
 
 
 4
 After the bankruptcy court's ruling, Wang moved the bankruptcy court for an entry of additional findings of fact and for an amendment of the judgment, pursuant to Rule 52(b) of the Federal Rules of Civil Procedure.[2] Wang raised a completely new argument, contending that, in exchange for the three checks it received, it had provided "new value" to VISC in the form of additional equipment and services and, therefore, the checks were not subject to avoidance, even though they were transferred within the proscribed ninety-day period. 11 U.S.C. Sec. 547(c)(1).[3] The bankruptcy court denied Wang's motion and the district court affirmed both the bankruptcy court ruling avoiding the transfer of funds by the first check and that denying Wang's Rule 52(b) motion.
 
 
 5
 Two days before the district court's judgment, Wang filed a Fed.R.Civ.P. 60(b) motion in the bankruptcy court, asking to be relieved from the judgment because of the negligent and wilful misconduct of its trial counsel in not raising the "new value" defense in the original bankruptcy court trial. The bankruptcy court also denied that motion and the district court likewise affirmed. Wang has appealed both the final judgment avoiding the transfer of funds and the denials of its Rule 52(b) and 60(b) motions. We consider both appeals.
 
 II
 
 6
 Our first task is to determine when a transfer of funds by check is effective for purposes of Sec. 547(b) of the Bankruptcy Code. This issue affects only the first check because the second and third checks clearly fall within the ninety-day preference period. Section 547(b) states, in pertinent part:Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor--
 
 
 7
 (4) made--
 
 
 8
 (A) on or within 90 days before the date of the filing of the petition[.]
 
 
 9
 We have not had occasion to determine when a transfer of property by check occurs for purposes of calculating the ninety-day preference period under Sec. 547(b). We have faced similar inquiries, however, concerning the determination of the date of transfer under other provisions of the Bankruptcy Code and our answer to those inquiries provides us significant guidance here. In re Continental Commodities, Inc., 841 F.2d 527 (4th Cir.1988), involved an interpretation of Sec. 547(c)(2)(B) which, before its amendment in 1984,[4] prohibited a trustee from avoiding a transfer made in the usual course of business "not later than 45 days after such debt was incurred." In Continental, the trustee sought to avoid the transfer of a check which had been delivered during the forty-five day period, but honored after that period. The district court affirmed the bankruptcy court's ruling that the transfer did not become effective until the bank honored the check. We reversed, holding that the transfer occurred when the check was delivered. In reaching that conclusion, we adopted the persuasive reasoning articulated in O'Neill v. Nestle Libbys P.R., Inc., 729 F.2d 35 (1st Cir.1984), and In re White River Corp., 799 F.2d 631 (10th Cir.1986). In White River Corp., the Tenth Circuit, relying largely on O'Neill, stated that the "delivery date view encourages trade creditors to continue dealing with troubled business by insulating normal business transactions from the trustee's avoiding power," that " 'in the commercial world receipt of a check ... is customarily looked upon as the date of payment of an obligation,' " and that "holding that the transfer occurs on the date the check is delivered allows the debtor, as opposed to the bank, to determine the precise date of transfer." In re White River, 799 F.2d at 634 (citations omitted).
 
 
 10
 In Quinn Wholesale, Inc. v. Northen, 873 F.2d 77 (4th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989), we were faced with a similar inquiry concerning whether a check transfer was made prior to the filing of the bankruptcy petition or was a postpetition transfer avoidable under Sec. 549(a).[5] The debtor in Quinn provided a creditor with a check one day, filed for bankruptcy the very next, and the bank honored the check four days later. The district court, relying principally on our decision in Continental, held the transfer to be effective on the date the check was delivered, rather than the date it was honored. The district court reasoned that "treating the debtor's [delivered] checks as transfers comports with the commercial reality, and is consistent with the expectations of those trade creditors ... whose willingness to continue doing business provides the debtor an opportunity to avoid bankruptcy." Quinn Wholesale, Inc. v. Northen, 100 B.R. 271, 275 (M.D.N.C.1988). We adopted and affirmed the district court's opinion. Quinn, 873 F.2d at 78.
 
 
 11
 We recognize, of course, that there are valid policy considerations which would support a ruling favoring the date a check is honored by a drawee bank. We think, however, the rationale we adopted in Continental and reiterated in our affirmance of the district court's judgment in Quinn supports a stronger policy argument in favor of selecting the date of delivery to the creditor as the date of transfer. In our view, the rationale generally applies to a transfer made within the proscribed prefiling ninety-day period as it does to the forty-five day excepted period for payments made in the usual course of business or to the proscribed postfiling period. The overall purpose of the bankruptcy law is served, in most instances, by encouraging creditors to continue doing business with a responsible, but struggling debtor, possibly avoiding the looming bankruptcy, and by recognizing that in the commercial arena, for most purposes, payment by check is the end of a commercial transaction. We are, therefore, persuaded that the transfer involved here was complete when VISC delivered the check to Wang.[6]
 
 
 12
 We agree, however, with the district court's resolution of Wang's Rule 52(b) and 60(b) motions. In its Rule 52(b) motion, Wang presented its "new value" defense after the trial on the issue of avoidance had been concluded. The district court denied the motion, observing that Wang had neither pleaded the "new value" defense nor offered evidence to support it. We simply can find no merit to Wang's contention that the district court erred.
 
 
 13
 Likewise, we need spend little time on Wang's contention that the district court erred in denying its Rule 60(b) motion. There, Wang argued that it was entitled to relief from the judgment because of its counsel's wilful neglect in failing to raise the "new value" defense at trial. Of course, attorney malfeasance which actively misleads a client or is comparably culpable might successfully ground a Rule 60(b) motion. However, as we stated in Evans v. United Life & Accident Ins. Co., 871 F.2d 466, 472 (4th Cir.1989), "a lawyer's ignorance or carelessness do [sic] not present cognizable grounds for relief under [Rule] 60(b)." We, therefore, affirm the district court's judgment that "poor lawyering" by Wang's counsel cannot properly ground his Rule 60(b) motion.
 
 
 14
 In view of the above, the judgment of the district court is affirmed in part and reversed in part.
 
 
 15
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 *
 For the Southern District of West Virginia, sitting by designation
 
 
 [1]
 A trustee was substituted for VISC, as plaintiff, after conversion of VISC's bankruptcy petition to a Chapter 7 proceeding
 
 
 [2]
 Rule 52(b) states, in pertinent part:
 (b) Amendment. Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.
 
 
 [3]
 Section 547(c)(1) states:
 (c) The trustee may not avoid under this section a transfer--
 (1) to the extent that such transfer was
 (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
 (B) in fact a substantially contemporaneous exchange[.]
 Between June 14, 1986, and September 12, 1986, Wang purportedly advanced "new value" to VISC in the amount of $271,936.48.
 
 
 [4]
 Before the amendment, Sec. 547(c)(2) stated, in pertinent part:
 (c) The trustee may not avoid under this section a transfer--
 (2) to the extent that such transfer was--
 (B) made not later than 45 days after such debt was incurred[.]
 Congress deleted the forty-five-day provision in its 1984 amendment to the Bankruptcy Code. The amendment, however, applied only to cases filed ninety days after July 10, 1984 and, therefore, did not affect the Continental Commodities case.
 
 
 [5]
 Section 549(a) states, in pertinent part:
 (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
 (1) that occurs after the commencement of the case; and
 (2)(B) that is not authorized under this title or by the court.
 
 
 [6]
 To the extent that In re Bob Grissett Golf Shoppes, Inc., 34 B.R. 320 (Bkrtcy.E.D.Va.1983), conflicts with the views expressed herein, we simply disagree with its holding